Good morning, counsel. How much time, if any, would you like to reserve for reply? I'd like to reserve four minutes, Your Honor. Four minutes? Excellent. You may proceed. Thank you, and may it please the courts, this is a case of... Can you move a little bit more to the mic? Yeah, thank you. We're asking this court to overturn the trial court's denial of our motion to set aside a default and for the test here, of course, is abuse of discretion. That raises an interesting point. What exactly are you asking for reversal? Correct, of our motion to set aside the default judgment, Your Honor. Okay, not remand? Well, it would have to be remanded back so that we can basically litigate the matter at that point. Okay, that's what I want to clarify. Thank you. So reversal based on abuse of discretion is appropriate when the trial court's application of the legal standard was illogical, implausible, or without support or inferences that can be drawn from the facts on the record, and that's United States v. Aguilar. So the critical issue here, and I'm not going to spend time on the issue of the service of process, what I'm focusing on is whether or not there was excusable neglect by the home association and not timely filing an answer to the adversary proceeding. Now, if you look at the record, Your Honors, the indications were that there was a receiver. The receiver, under power of state court, appointed himself as a sole member of the Board of Directors, and then the receiver went on and represented to the state court that as of May 2024, he had removed himself from the member of the Board of Directors, and he had caused appointment of Board of Directors members who were represented by the buyer of the property. The property was sold for $31.5 million. That is a representation he made to the state court. However, what happened was that Mr. Maher, counsel for the trustee, noticed these loans that were made or advances or transfers that were made by the receivership estate to the home association, and correspondence was sent by counsel for the trustee, counsel for the receiver, on September 10th, and that's ER 13, an email was sent to the receiver advising the receiver that those funds had to be turned over and that the receiver may want to consider getting an attorney because the next step would be a lawsuit. That's ER 13. Now, apparently what happened is, well, first of all, the receiver refused to do so, and then, interestingly, about a week or so after that incident, even though he had represented to the state court that he is now out of the Board of Directors and there's an independent Board of Directors appointed, even though he had represented that to the state court, he was still not discharged as a receiver, so he, under color of the order that had appointed him as a receiver, he went back to the HOA and he tried to appoint his own members of the Board of Directors without an election, okay? I can speculate that this was because after he received the email from counsel for the trustee, he was a little worried, maybe he was trying to go back to the HOA and cause the HOA to give the money back rather than to protect himself personally. We can speculate as to that, but what happened is, and this is ER 23 and 32, he went back and even though he had represented the state court that the Board of Directors are now independent and he's gone and he's out of it, he went back and tried to appoint his own new disputed directors and that threw a monkey wrench into the ability of HOA. I'm a little confused by this or I question it, okay? You have a deadlock, you've got these sort of two sets of directors, okay? But how is that a deadlock in appearing in the litigation some way? You know, either side could have said, somebody's contesting whether we're the parties that can do this, but we're letting you know we're answering. I mean, I don't see, I can see there's a deadlock in connection with the director's ability to operate. I don't see that there would be any deadlock for either side or both responding to the complaint. Or even if I can add on that a little bit, in January 2024, Mr. Maher offered a stipulation to extend the time to, I believe, a lawyer in your firm, Mr. Silva, and that was never responded to. Correct. Even, so you're telling me that the two boards could not agree between them? It was impossible as a matter of law for them to simply agree to stipulate to the extension of time to answer the complaint and avoid default. But for the record, I'm not part of Mr. Silva's law firm. I'm especially appearing, I was asked to do the oral arguments. And to respond to that, actually, Your Honor, this would have required signing a retainer agreement because, as we all know, a corporate entity cannot appear without counsel. And I can cite the local rules, but we all know that. And that would require budgeting and retaining counsel. Why is that their problem? Why is that the trustee's problem? It is not the trustee's problem, per se. It is a legal impossibility for the board to act. But they did nothing. Couldn't either side, either board members, come back and deal with the trustee and say, yes, we're going to answer your lawsuit, but we're trying to figure out which board of directors should answer it? I mean, some response, especially when the trustee was willing to give an extension. I mean, we're looking here to see whether or not it's unreasonable under these circumstances. In this case, isn't it unreasonable that they did nothing, either side? It would be unreasonable if they had the ability to. But either side could have said, as the board of directors, you need for a corporation, you need to have counsel to appear in an action. But you can have a corporation respond to the trustee and say, we're working on getting counsel so that we can respond. You had a trustee that was willing to give an extension, but there was no response to it. I mean, doesn't that provide a substantial enough basis for the board to conclude that the failure to answer was unreasonable? The failure to answer would have been unreasonable if the board of directors was willing to authorize that. It appears that the board of directors from the receiver's side was not interested in defending this because the receiver was worried about personal liability. The board appeared... Again, that seems to be sympathetic to the concern. Not sure why that gives you from December until June to actually solve that because the boards were able to solve it by that point. Actually, a little bit before then because Mr. Silva called up and asked for the default to be removed. He did. Mr. Silva did ask that the default be removed. There was enough ability for Mr. Silva to have discussions in November, December, January with the trustee, right? Correct. So from what we are putting together, Mr. Silva could have asked for this default to be set aside, but a stipulation cannot be entered. You're parsing that pretty fine because he had enough authority to act on a board, the board's staff, only to make a request, but not to appear in court. Yeah. Court appearance is altogether different than asking the trustee to set aside. But if that was the problem, he could have responded and said, I have a problem with the board of directors and who can respond here. Give me some more time to be able to figure it out with the directors. We are going to respond. We can't do it now. And he did attempt that in December 31st. He said, I'll try to clarify everything next week. And this was after December 15th, the old management company was terminated or dismissed or resigned. That was December 15th of 2024. And December 31st, Mr. Silva said, I'll try to clarify everything next week. But the actual, the actual new management company was not picked until January 31st. And authorization, authorization to retain counsel. First of all, the new board wasn't appointed till August. Election were not held until August of 2025. But counsel, all of this is about the machinations and the problems within the board itself. It was. None of it was communicated to the bankruptcy court. Nobody filed anything in the court to say there's an issue here. We have a problem. We need more time. Give us more time. Why does the court care if there are internal problems and you can't resolve it amongst yourself? File something with the court. Inform the court that there's an issue. Ask for some relief. Nothing happens. And so what you're saying is as long as it's confusing and as long as we can't act and as long as we're not sure who's going to pay the lawyer, then we don't have to do anything. And that's excusable neglect. Well, what I'm saying is where as a matter of law, authority is that governs the HOA. Authority is not granted to retain counsel. They both they both had an obligation to act in the best interest of the entity that they were purporting to serve, correct? In theory, that is correct. No, that if you are purporting to be a board, you're representing the entity on which you are a board of, correct? That is correct. Yes. All right. I just have a hard time to believe in furtherance of that, there was an inability to just stipulate that somebody can say, we need more time. And that seems to be the problem is, as Judge Gansing, that seems to be the HOA's problem. They didn't do it. They chose to fight. And that was a choice. It didn't make it impossible. It was not a choice, Your Honor. If it had been a choice, then the trustee's position would be absolutely correct. But when you're barred from acting because you have a monkey wrench in the process, it's almost as if somebody is blocking you from going to the courthouse. Okay. Let's say there is confusion. Okay. The board of directors are confused and there is confusion there. But ultimately, the decision is whether or not the trial, the bankruptcy judge abused the discretion in making the decision. So it seems like you're asking us to weigh the facts again. Was the confusion enough to meet the standard of excusable neglect? And isn't that a factual question? And so we need to look to see whether or not the bankruptcy judge abused the discretion. It is a question of when, due to the interference by a third party receiver, the board is blocked, then it's almost a situation where somebody's stopping you from going to the courthouse. And that's excusable neglect. When you're physically barred or legally barred from filing responsive pleading, that's excusable neglect. It is not very different from some third party intentionally blocking access to the courthouse. But isn't your relief against the entity that created that block? I mean, that's an internal imposed blockage by your construct. By a third party. Great. And you've got cause of against a third party then. And they're not in bankruptcy. No, we don't. That's an interesting question. But. If it causes if it causes if somebody blocks me from going to the physical courthouse, if you block yourself is really what's happening. Yeah, I don't I don't see the block because even if there's the knowledge that there's a dispute, that somebody disputes your ability to file a notice of appearance or act on behalf of the board, somebody disputes that you can say somebody disputes it. But I've got to take action because I claim that we do have. Well, the members of the board of directors are distinct from the entity itself. So corporate entities, of course, legal fiction for the shareholders, member of the board, directors, officers are. You're about in a minute. I just want to point. Yes. What I reserve, whatever I'm sure. Thank you. Sorry. Good morning. Please, the court. The panel is focused on the issues I've been concerned about. And I don't I'm not going to add anything. I can talk about the receiver if the panel wants. Really, it's the question of impossibility that. The. The H.O.A.'s continue to raise, you know, if you want to take a swing at that, it'd be interesting hearing. Well, it. You know, the standard I mean, the standard of excusable neglect is a little bit murky. I, I think the I just don't buy the impossibility. I don't know what's in the right. I don't remember what's in the record about what was going on internally with the H.O.A. other than conclusory statements that were made that there were there was some problem with the receiver coming back to life after four or five months. I don't know what happened between May of 2024 and October of 2024 when the receiver reappears. The the the owners who constituted the members of the H.O.A. at least equitably excuse me, equitably were aware that the receiver was trying to close up shop. They had they had noticed that he had filed his application for discharge in his final report. And if they had a claim against him, they could have done something about it. They never did. I mean, of course, I always like to mitigate my damages if I can. We made claims against the receiver because I think under the receivership orders, he wasn't authorized to advance huge sums of money that belonged to the bankruptcy estate at that time to these H.O.A.s without any means of those being repaid. And I just, you know, you and your spouse are getting divorced and somebody sues you for a personal injury and you can't answer the complaint because you can't decide on who the lawyer should be. That's sort of a comparable situation. And so I just it just doesn't rise to excusable neglect. They knew what they were doing. And as the record shows, I really sort of bent over backwards to help them out. And I got I mean, I had no response or I don't know yet. I'll tell you next week. And even, you know, with there was an exchange on January 6th, there was, you know, an email I sent on January 9. I'm looking bad. I can't put put off filing a request for default any longer. You're forcing me to file it. And four days later, I did. So I just I think this internal disarray is it's just not very compelling at all. In view of the fact that they had service, adequate service of the complaint from the very beginning and all you did was extend time and give them more chances. And that is correct. And they had two weeks advance notice that the complaint was going to be filed. One of the things when you read the briefing, I just want to make sure I understand, you know, there is a dispute about the adequacy of service and it breaks down mainly as to the change in the registration. My understanding is that you served the master HOA to the chief executive officer as well. Is that correct? Isn't that sufficient service? Yes, it is. All right. Yeah, I'd be interested if you want to take up the mantle of the meritorious defense as well. Well, I didn't see that they had really articulated a meritorious defense. I mean, there are two, there's the, you know, the money hadn't received and the two common account claims. There's the unauthorized post-petition transfers and then there's fraudulent conveyance. And so to fraudulent conveyance, you know, there's really aren't that many defenses. One, I didn't get the money. I don't know it for some other reason, like gave consideration. I, you know, I was a creditor. And so there's none of that. It's all one. The receiver shouldn't have given us the money. There's never a representation that the HOAs didn't get the money. And then there's these HOA assessment liens against the owner of another condominium building in the development. And those were clearly in favor of the master HOA. And there's been a suggestion that somehow the bankruptcy estate was entitled to enjoy those assessments if they had been collected or if they were collected. They weren't collected and not in the record are the CCNRs from the development. And the CCNRs clearly provide that a priority to trust trumps a subsequent assessment lien. So the relationship between the two buildings and the estate and building A and the assessments, that's a subset of that can't that the record isn't clear if that is the full $700,000 subsum set. You know, the only reference that I saw was the initial order on the receiver to allow the pay. That was like $150,000. And that arguably was, but there's no number attached to this question about the to building A. Is there? There are, I think the notices of assessment are in the record. I don't remember what the pages are, but there's a notice of assessment sometime in the summer of 2023. And then a notice of sale in January of 2024. They're in the record. Is it your belief or understanding position that those assessments cover the full $700,000? No. Okay. That's what clearly do not. Thank you. And buildings B and C, the ones that were owned by the bankruptcy estate were current on their HOA dues. Okay. Anything else? No. Any other questions? No. Thank you very much. May I? Thank you. Regarding the equitable, regarding the meritorious defense, there is a defensive waiver because the trustee had notice of these monies being going out. We believe that HOA is entitled to at least some kind of a set off because it cannot be disputed that when the entire complex conditions were improved, that increased the desirability of buildings B and C, which then sold for $31.5 million. There was clearly a benefit to this state. So at least those equitable defenses and of course latches as well. So there are meritorious defenses. Counsel's argument about a husband and wife being sued and then neither of them decide because they're going through a divorce is inaccurate because a husband could file a separate answer and the wife could file a separate answer. But this situation is more like a third party, not legally, but physically, but legally obstructing access to the courthouse. If we knew if the receiver was blocking, physically blocking, we would have relief. And I think the legally blocking is no different. And that's it, Your Honors. Thank you. Thank you very much. If there's any questions, I'll conclude the argument. Matter will be submitted. We will try to get out of the decision as fast as possible.
judges: Spraker, Gan, Corbit